Seth W. Wiener, California State Bar No. 203747
LAW OFFICES OF SETH W. WIENER
609 Karina Court
San Ramon, CA 94582
Telephone: (925) 828-8648, (925) 487-5607
Email: *sethwiener@yahoo.com*

Attorney for Plaintiff
KEVIN TRAYLOR

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>GUISEPPE RESSA,<br><br>    Debtor.<br>_____<br>KEVIN TRAYLOR,<br><br>    Plaintiff,<br><br>  v.<br><br>GUISEPPE RESSA,<br><br>    Defendant. | Case No.: 10-31376<br><br>Adversary Proceeding No.<br><br>**KEVIN TRAYLOR'S COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A)** |

Plaintiff Kevin Traylor ("Traylor") brings this action against the Defendant Guiseppe Ressa ("Ressa"), to determine the non-dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A), and in support thereof alleges as follows:

**INTRODUCTION**

1. The Debtor Ressa has engaged in a pattern of fraud and decent that mandates that his debt to Traylor be deemed non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Ressa borrowed in excess of $1,379,633.00 from Traylor pursuant to a series of loan agreements for the construction of real estate development projects. Ressa always assured Traylor that his investment would be timely repaid, and when it was not repaid, Traylor was promised that if he would simply grant forbearance on the repayment of the existing loans, and make new loans as needed, he would either be repaid with interest, be given security, or be given an equity share in one or more of the entities that would eventually hold title to the projects. At no time did Ressa ever grant the promised security or equity interest to Traylor nor did he ever repay the sums borrowed. Instead, Ressa kept Traylor's money

TRAYLOR'S NON-DISCHARGEABILITY COMPLAINT      1

for his own profit and use.   As such, Ressa's liability to Traylor is not and should not be dischargeable.

## JURISDICTION AND VENUE

2. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 523.   This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(6) and a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)(I) and (O).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## PARTIES

4. Plaintiff Traylor is now, and at all times herein mentioned was, a resident of the County of Solano, State of California.

5. Plaintiff is informed and believes, and thereon alleges, that Defendant Ressa is now, and at all times herein mentioned was, a resident of the County of Lake, State of California.

## ALTER-EGO ALLEGATIONS

6. Plaintiff is informed and believes, and thereon alleges, that on or about August 17, 2004, Ressa founded a corporation named Dragonfly Properties, Inc. ("Dragonfly Properties"), which is now and at all times herein mentioned was, a corporation existing under and by virtue of the laws of the State of California and doing business in this District.

7. Plaintiff is informed and believes, and thereon alleges, that on or about April 19, 2007, Ressa founded a limited liability company named Clearlake Rise, LLC ("Clearlake Rise"), which is now and at all times herein mentioned was, a limited liability company existing under and by virtue of the laws of the State of California and doing business in this District.

8. Plaintiff is informed and believes, and thereon alleges that Ressa, Dragonfly Properties, and Clearlake Rise did, between and among themselves, commingle funds and other assets, failed to segregate funds of the separate entities, and engaged in the unauthorized diversion of corporate funds or assets to other than corporate uses; and that Dragonfly Properties and Clearlake Rise failed to maintain adequate corporate records and corporate formalities; and that as between Dragonfly Properties and Clearlake Rise, there was identical ownership in the two entities, and that the same owner or owners dominated and controlled both entities; and that Dragonfly Properties and

Clearlake Rise were and are inadequately capitalized; and that Dragonfly Properties and Clearlake Rise were and are used as a mere shell, instrumentality and conduit for the ventures and business of Ressa; and that Dragonfly Properties and Clearlake Rise have been used to procure labor, services, and merchandise for and on behalf of Ressa; and that the assets and liabilities of Dragonfly Properties and Clearlake Rise have been manipulated to the detriment of their creditors, including but not limited to, Traylor; and that Dragonfly Properties and Clearlake Rise have been used and are being used by Ressa to improperly shield Ressa from liability. Plaintiff further alleges, on information and belief, that there is a unity of interest and ownership as between Ressa, Dragonfly Properties, and Clearlake Rise, such that the individuality or separateness of Ressa, Dragonfly Properties, and Clearlake Rise has ceased; and that the continued adherence to the fiction of a separate existence of Dragonfly Properties and Clearlake Rise would, under the particular circumstances of this action, promote injustice and sanction a fraud upon this Court.

**FACTS**

9. On or about October 1, 2003, Ressa did sign, and deliver to Traylor, at Vallejo, California, a Promissory Note by which Ressa promised to pay to Traylor the principal sum of $60,000, together with interest on the unpaid balance at the rate of 10% per annum from and after October 1, 2003; with both the principal and interest payable in installments as follows: interest only payable in twelve monthly payments of $600 each to be paid on the first of each month starting November 1, 2003; with the entire principal and remaining interest to be paid on October 1, 2004; with an additional sum of $10,000 to be paid to the Holder of the Note on November 1, 2004 to extinguish other legal rights of the Holder as stated in the Note. The Note also recites that it will be secured by a Deed of Trust. Ressa has failed and refused to pay any of the principal or interest owed on this Note. A true and correct copy of the October 1, 2003 Promissory Note is attached hereto as Exhibit A and incorporated herein by reference.

10. On or about August 2, 2004, Ressa did sign, and deliver to Traylor, at Vallejo, California, a Promissory Note, by which Ressa promised to pay to Traylor the principal sum of $25,000, together with interest on the unpaid balance at the rate of 10% per annum from August 2,

2004. Ressa has failed and refused to pay any of the principal or interest owed on this Note. A true and correct copy of the August 2, 2004 Promissory Note is attached hereto as Exhibit B.

11. On or about November 10, 2004, Ressa did sign, and deliver to Traylor, at Vallejo, California, an Amended and Restated Promissory Note in the principal amount of $125,000, by which Ressa promised to pay to Traylor the principal sum of $125,000, together with interest on the unpaid balance at the rate of 6% per annum from November 10, 2004; with both the principal and interest payable upon the earlier of either March 16, 2005, or the refinancing of the real property located at 10649 Sunset Ridge Drive, Kelseyville, California (the "Riviera House Project"). The Note of November 10, 2004 also recites that the property at 10649 Sunset Ridge Drive in Kelseyville was to serve as security for repayment of the Note. Ressa has failed and refused to pay of the principal or interest owed on this Note. A true and correct copy of the November 10, 2004 Amended and Restated Promissory Note is attached hereto as Exhibit C.

12. In or about November 2004 through January 2005, pursuant to an oral loan agreement made in Vallejo, California, Traylor paid approximately $68,500 as a loan for Ressa's use in the construction of improvements for the Riviera House Project. Ressa asked for and was given this loan in exchange for the oral promise that once the Riviera House Project was remodeled and sold, all sums from all prior loans owed to Traylor, including but not limited to the loans for the Lake Street Project, would all be repaid; and the parties did thereupon agree to and did extend the repayment period for the prior loans for the Lake Street Project, to run concurrent with the time for repayment of the loan for the Riveiera House Project.

13. In or about January 2005, pursuant to an oral loan agremenet made in Vallejo, California, Traylor paid $45,000 as a loan for Ressa's use in the construction of three homes on Long Valley Road, in Clearlake Oakes, in Lake County (the "Spring Valley Project"). In or about October 2006, Ressa borrowed another $7,067 from Traylor, which money was paid by Traylor on account of a material supplier for the Spring Valley Project, and which payment was for Ressa's benefit. At all times during which Ressa requested loans from Traylor for the Spring Valley Project, Ressa promised that upon completion of the Spring Valley Project all of Traylor's loans would be repaid by either refinancing or sale of the three homes from the Spring Valley Project. The parties agreed to and

extended the time for repayment of all of the prior loans for the Lake Street Project and the Riviera House Project to run concurrently with the time for repayment of the loan for the Spring Valley Project.

14. On or about April 11, 2006, Ressa did sign, and deliver to Traylor, at Vallejo, California, an Amended and Restated Promissory Note Secured by Real Property, in the principal amount of $290,000, by which Ressa promised to pay to Traylor the principal sum of $290,000, together with interest on the unpaid balance at the rate of 8% per annum from April 11, 2006; with both the principal and interest payable upon the earlier of either October 11, 2008, or the refinancing or condo conversion and sale of the real property located at 8030 Lake Street, Lower Lake, California. Said Amended and Restated Promissory Note Secured by Real Property was to be secured by the real property and improvements at 8030 Lake Street, Lower Lake, California. From April 2006 to January 2007, Ressa made payments on said Amended and Restated Promissory Note Secured by Real Property in the total amount of $19,200, and thereafter defaulted and has failed and refused to pay any further sums owed as principal or interest on said Amended and Restated Promissory Note Secured by Real Property. A true and correct copy of said Amended and Restated Promissory Note Secured by Real Property, dated April 11, 2006 in the amount of $290,000, is attached hereto as Exhibit D.

15. In or about January 2007, pursuant to an oral loan agreement made in Vallejo, California, Traylor paid the total sum of $82,000 as a loan to Ressa for use in construction of a new home at 2723 Apache Trail, in Clearlake Oakes, in Lake County, California (the "Apache Trail Project"). At all times during which Ressa requested loans from Traylor for the Apache Trail Project, Ressa promised that upon completion of the Apache Trail Project all of Traylor's loans would be repaid by either refinancing or sale of the Apache Trail Project. The parties did thereupon agree to and did extend the time for repayment of the prior loans for the Lake Street Project, the Riviera House Project, and the Spring Valley Project, to run concurrent with the time for repayment of the loan for the Apache Trail Project.

16. In or about January 2007, pursuant to an oral loan agreement made in Vallejo, California, Plaintiff paid the total sum of $210,372 to Ressa for the purchase and improvement of a

property located at 15985 Kugelman Street, in Lower Lake, California (the "Kugelman Project"). At all times during which Ressa requested loans from Traylor for the Kugelman Project, Ressa promised that upon completion of the Kugelman Project all of Traylor's loans would be repaid by refinancing or sale of the Kugelman Project. The parties did thereupon agree to and did extend the time for repayment of the prior loans for the Lake Street Project, the Riviera House Project, and the Spring Valley Project, to run concurrent with the time for repayment of the loan for the Kugelman Project.

17. In or about March 2007, pursuant to an oral loan agreement made in Vallejo, California, Traylor paid the total sum of $168,000 to Ressa as a loan for the purchase of 17 lots in Clearlake, California (the "Austin Street Project"), and upon payment of said purchase price did convey to Ressa title to said lots, in reliance upon the promises of Ressa as alleged herein. In or about April 2007 through June 2007, Traylor did loan to Ressa the further sum of $327,500 for Ressa's use in the construction of improvements to the 17 lots comprising the Austin Street Project. Ressa did promise to Traylor that if Traylor paid the purchase price for the Austin Street Project, and made further loans for the construction of improvements on said lots, as herein alleged, then Ressa would convey to Traylor a membership interest in Ressa's limited liability company, Clearlake Rise, LLC, or that all of Traylor's loans would be adequately secured, or that the loans would be repaid by Ressa once the Austin Street Project was completed and either refinanced or sold. The parties thereafter agreed to and extended the time for repayment of the prior loans for the Lake Street Project, the Riviera House Project, the Spring Valley Project, the Apache Trail Project, and the Kugelman project, to run concurrent with the repayment of the loans for the Austin Street Project.

**FIRST CLAIM FOR RELIEF**

**(For a Determination That Ressa's Debt To Traylor Is Not Dischargeable Pursuant to 11 U.S.C. § 523(a)(2)(A)**

18. Traylor incorporates by reference the allegations contained in Paragraphs 1 through 17 above as though fully set forth herein.

19. On each and every occasion, when Traylor was asked to loan funds to Ressa for construction of the real estate development projects described and referred to herein, Traylor was always assured that his loans would be timely repaid. When Traylor's loans were not repaid, Ressa

promised Traylor that if Traylor would simply grant forebearance on the repayment of the existing loans, and make new loans as needed, then Traylor would either be repaid with interest, or would be given security by way of a deed of trust or other adequate security, or that Traylor would eventually be given an equity share in one or more of the entities that would eventually hold title to the projects so that Traylor would share in the profits from the projects. In making the new loans as alleged herein and in granting forebearance on collection of the existing loans as alleged herein, Traylor reasonably relied upon said promises from Ressa.

20. At all times when seeking the loans from Traylor as alleged herein, Ressa provided to Traylor basic information about the costs of the projects, the expected profit from the projects, plans for sale and refinancing of the projects, and other information upon which Traylor reasonably relied upon in deciding to make the new loans as alleged herein, and to grant forebearance on collection of existing loans. On October 5, 2007, Traylor met with Ressa and Ressa's attorney, John Resso, and in these meetings, Ressa reaffirmed his obligation to Traylor under the delinquent loans, as extended by Traylor's forebearance, and Traylor was assured by Ressa and Ressa's attorney at that time that Traylor's loans would be repaid, and that Ressa simply needed additional funds to move the projects forward, and that with additional loans all sums owed to Traylor would be repaid with interest, or that Traylor would be given title to or security in the subject real properties, or that Traylor would be given a valuable membership interest in Clearlake Rise, LLC or shares in Dragonfly Properties, Inc. In providing the information about the projects, and in promising to repay the loans upon sale or refinancing of the various projects, and in meeting with Traylor as alleged herein, Ressa knew or should have known that Traylor would be reasonably induced to rely on Ressa's promises of repayment and promises of security for the loans, and was therefore reasonably induced to grant the forebearance on collection of the loans as alleged herein.

21. The true facts were that Ressa had no intention of properly investing Traylor's money or repaying Traylor as promised, and Ressa simply wanted to get possession of Traylor's money for his own profit and use, and simply took and did thereafter do one or more of the following with regard to each of the real estate projects described and alleged herein: Ressa either mismanaged the projects and the loan funds obtained from Ressa such that he failed to pay the costs of labor or

materials for the various projects, and did thereby allow liens to accumulate on the properties, thereby making refinancing difficult or impossible, and thereby preventing repayment of Traylor's loans; or Ressa secretly refinanced the projects and did take and keep for himself the proceeds of the new loans from Traylor without repaying Traylor the sums owed on the loans; or Ressa commingled the loans from Traylor with Ressa's own personal funds instead of investing the loans from Traylor into the real estate projects as promised; or Ressa improved the properties and then secretly conveyed title to third parties to hold for Ressa's benefit so as to make it appear that the projects had to be sold off without profit and without paying off Traylor's loans. At no time did Ressa ever actually grant to Traylor a security interest in any real property as promised, nor did Ressa ever convey to Traylor any member or share in any limited liability company or corporation as promised, nor did Ressa ever repay the sums borrowed.

22. Had Traylor known the true facts of what Ressa intended to do with and did do with the loan proceeds, he never would have loaned any money to Ressa. Traylor reasonably relied upon the oral and written promises and claims of Ressa with regard to how the money would be used, how the loans would eventually be repaid, and the promises that Traylor would receive a security interest in the properties.

23. Ressa's conduct constitutes false pretenses and/or false representations and/or actual fraud.

WHEREFORE, Traylor prays for the entry of judgment against Ressa as follows:

1. That the Court determine that the debt owed by Ressa to Traylor as a result of Ressa's false pretenses and/or false representations and/or actual fraud, upon which Traylor relied to his detriment, and as a result of Ressa's willful and malicious conduct, is nondischargeable by virtue of the provisions of 11 U.S.C. § 523(a)(2)(A);

2. For interest;

3. For an award of attorney's fees as allowable by law in an amount the Court determines to be reasonable;

4. For costs of suit herein incurred; and

5. For such other and further relief as this Court deems just and proper.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: June 7, 2010 | LAW OFFICES OF SETH W. WIENER |
| 3 | | /S/ |
| 4 | | By: _____ |
| 5 | | Seth W. Wiener<br>Attorney for Plaintiff |
| 6 | | KEVIN TRAYLOR |

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing KEVIN TRAYLOR'S COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) was served on June 7, 2010. Service was accomplished by the method and to the following as indicated:

BY ELECTRONIC NOTICE OR FIRST CLASS MAIL

Guiseppe Ressa
899 King Street, Unit 887
San Francisco, CA 94107

Darya Sara Druch
Law Offices of Darya Sara Druch
1 Kaiser Plaza #480
Oakland, CA 94612

E. Lynn Schoenmann
800 Powell Street
San Francisco, CA 94108

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 7, 2010, at San Ramon, California.

By:  /S/

_____
Seth W. Wiener