Seth W. Wiener, California State Bar No. 203747
LAW OFFICES OF SETH W. WIENER
609 Karina Court
San Ramon, CA 94582
Telephone: (925) 828-8648, (925) 487-5607
Email: *sethwiener@yahoo.com*

Attorney for Plaintiff
KEVIN TRAYLOR

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>GUISEPPE RESSA,<br><br>    Debtor.<br>KEVIN TRAYLOR,<br><br>    Plaintiff,<br><br>v.<br><br>GUISEPPE RESSA,<br><br>    Defendant. | Case No.: 10-31376<br><br>Adversary Proceeding No. 10-03095<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>Date:    August 27, 2010<br>Time:    10:00 a.m.<br>Judge:   Hon. Dennis Montali<br>Location: 235 Pine Street, 19th Floor<br>          San Francisco, CA 94104 |

TRAYLOR'S OPPOSITION TO MOTION TO DISMISS     0

Plaintiff Kevin Traylor ("Plaintiff" or "Traylor") respectfully submits his Opposition to Defendant Guiseppe Ressa's ("Defendant" or "Ressa") Motion to Dismiss the Complaint for Failure to State a Claim and Alternative Motion for More Definite Statement (the "Motion").

## I. INTRODUCTION

The Debtor Ressa has engaged in a pattern of fraud and deceit that mandates that his debt to Traylor be deemed non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Ressa took in excess of $1,379,633.00 from Traylor pursuant to a series of loan agreements for the construction of real estate development projects. Ressa always assured Traylor that his investments would be timely repaid, and when they were not repaid, Traylor was promised that if he would simply grant forbearance on the repayment of the existing loans, and make new loans as needed, he would either be repaid with interest, be given security, or be given an equity share in one or more of the entities that would eventually hold title to the projects. At no time did Ressa ever grant the promised security or equity interest to Traylor nor did he ever repay the sums borrowed. Instead, Ressa kept Traylor's money for his own profit and use. As such, Ressa's liability to Traylor is not and should not be dischargeable.

Ressa has brought a Motion to Dismiss Traylor's Complaint to Determine Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A) (the "Complaint"). Ressa argues that the Complaint should be dismissed because the fraud allegations in the Complaint are purportedly not plead with the requisite particularity. In so arguing, Ressa would have the Court ignore the detailed factual allegations in the Complaint about the false representations made by Ressa that were intended to induce Traylor to give money to Ressa, and which Traylor relied on to his substantial detriment. The Motion to Dismiss must be denied and the case allowed to proceed on its merits.

## II. ALLEGATIONS IN COMPLAINT

Between October 1, 2003 and March 2007, Traylor and Ressa entered into a series of promissory notes and oral loan agreements, pursuant to which Traylor gave in excess of $1,379,633.00 to Ressa for the purchase of properties in Solano County and Lake County, California. (Complaint, ¶¶ 9-17). Copies of these promissory notes are attached to the Complaint as Exhibits A to D. (Complaint, Exhs. A-D).

The first two promissory notes between Traylor and Ressa were entered into respectively on October 1, 2003 and August 1, 2004. (Complaint, ¶¶ 9-10 & Exhs. A & B). Ressa took $60,000 from Traylor pursuant to the October 1, 2003 promissory note and $25,000 pursuant to the August 2, 2004 note. (*Id*.). Ressa promised to pay 10% interest per annum on each of these promissory notes, and instead failed to pay any of the principal or interest. (Complaint, ¶¶ 9-10).

On November 10, 2004, Ressa borrowed an additional $125,000 from Taylor pursuant to a promissory note that provided for 6% interest per annum, and further agreed to provide a property in Kelseyville, California, as security for the promissory note. (Complaint, ¶ 11, Exh. C). Again, Ressa failed to pay any of the principal or interest due on this note. (Complaint, ¶ 11).

Between November 2004 and January 2005, Traylor provided an additional $68,500 to Ressa for the remodeling of the project in Kelseyville, California. (Complaint, ¶ 12). Ressa orally promised that once the project was remodeled and sold, all prior loans to Traylor would be repaid. (*Id*.). Pursuant to this agreement, Traylor extended the time for repayment of the prior loans he had made to Ressa. (*Id*).

In January 2005, Ressa borrowed an additional $52,067 from Traylor for use in the construction of three homes in Lake County. (Complaint, ¶ 13). Ressa promised that upon completion of this project, he would repay all amounts due Traylor and Traylor agreed to extend the time for repayment of the prior loans. (*Id*.).

In April 2006, Traylor loaned an additional $270,000 to Ressa pursuant to a promissory note that provided for 8% interest per annum, and which note was to be secured by a property in Lake County. (Complaint, ¶ 14 & Exh. D). Ressa defaulted on his obligations under this promissory note. (Complaint, ¶ 14).

In January 2007, Traylor paid $82,000 to Ressa for use in constructing a home in Lake County, and Traylor promised to repay all of the prior loans from Traylor upon the refinancing or sale of the home. (Complaint, ¶ 15). In January 2007, Traylor also paid $210,372 to Ressa for the purchase and improvement of a property in Lake County, and Ressa agreed to repay this loan from the refinancing or sale of the project. (Complaint, ¶ 16).

Finally, between March 2007 and June 2007, Traylor gave a total of $495,500 to Ressa for the development of 17 lots in Lake County, California. (Complaint, ¶ 17). Ressa promised that in exchange for the loans, Ressa would provide Traylor with a membership interest in Ressa's limited liability company, Clearlake Rise, LLC, or that all of Traylor's loans would be adequately secured, or that the loans would be repaid once the project was completed. (*Id.*). The parties agreed that the time for repayment of all of the prior loans would be extended to run concurrently with the repayment of the loans for this project. (*Id.*).

The Complaint seeks a determination that Ressa's debt to Traylor is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). It incorporates the factual allegations set forth above, and alleges as follows:

> 19. On each and every occasion, when Traylor was asked to loan funds to Ressa for construction of the real estate development projects described and referred to herein, Traylor was always assured that his loans would be timely repaid. When Traylor's loans were not repaid, Ressa promised Traylor that if Traylor would simply grant forebearance on the repayment of the existing loans, and make new loans as needed, then Traylor would either be repaid with interest, or would be given security by way of a deed of trust or other adequate security, or that Traylor would eventually be given an equity share in one or more of the entities that would eventually hold title to the projects so that Traylor would share in the profits from the projects. In making the new loans as alleged herein and in granting forebearance on collection of the existing loans as alleged herein, Traylor reasonably relied upon said promises from Ressa.
>
> 20. At all times when seeking the loans from Traylor as alleged herein, Ressa provided to Traylor basic information about the costs of the projects, the expected profit from the projects, plans for sale and refinancing of the projects, and other information upon which Traylor reasonably relied upon in deciding to make the new loans as alleged herein, and to grant forebearance on collection of existing loans. On October 5, 2007, Traylor met with Ressa and Ressa's attorney, John Resso, and in these meetings, Ressa reaffirmed his obligation to Traylor under the delinquent loans, as extended by Traylor's forebearance, and Traylor was assured by Ressa and Ressa's attorney at that time that Traylor's loans would be repaid, and that Ressa simply needed additional funds to move the projects forward, and that with additional loans all sums owed to Traylor would be repaid with interest, or that Traylor would be given title to or security in the subject real properties, or that Traylor would be given a valuable membership interest in Clearlake Rise, LLC or shares in Dragonfly Properties, Inc. In providing the information about the projects, and in promising to repay the loans upon sale or refinancing of the various projects, and in meeting with Traylor as alleged herein, Ressa knew or should have known that Traylor would be reasonably induced to rely on Ressa's promises of repayment and promises of security for the

loans, and was therefore reasonably induced to grant the forebearance on collection of the loans as alleged herein.

21. The true facts were that Ressa had no intention of properly investing Traylor's money or repaying Traylor as promised, and Ressa simply wanted to get possession of Traylor's money for his own profit and use, and simply took and did thereafter do one or more of the following with regard to each of the real estate projects described and alleged herein: Ressa either mismanaged the projects and the loan funds obtained from Ressa such that he failed to pay the costs of labor or materials for the various projects, and did thereby allow liens to accumulate on the properties, thereby making refinancing difficult or impossible, and thereby preventing repayment of Traylor's loans; or Ressa secretly refinanced the projects and did take and keep for himself the proceeds of the new loans from Traylor without repaying Traylor the sums owed on the loans; or Ressa commingled the loans from Traylor with Ressa's own personal funds instead of investing the loans from Traylor into the real estate projects as promised; or Ressa improved the properties and then secretly conveyed title to third parties to hold for Ressa's benefit so as to make it appear that the projects had to be sold off without profit and without paying off Traylor's loans. At no time did Ressa ever actually grant to Traylor a security interest in any real property as promised, nor did Ressa ever convey to Traylor any member or share in any limited liability company or corporation as promised, nor did Ressa ever repay the sums borrowed.

22. Had Traylor known the true facts of what Ressa intended to do with and did do with the loan proceeds, he never would have loaned any money to Ressa. Traylor reasonably relied upon the oral and written promises and claims of Ressa with regard to how the money would be used, how the loans would eventually be repaid, and the promises that Traylor would receive a security interest in the properties.

23. Ressa's conduct constitutes false pretenses and/or false representations and/or actual fraud.

(Complaint ¶¶ 19-23).

### III. ARGUMENT

#### A. Standard for Pleading Fraud

"Complaints and other pleadings setting forth claims in bankruptcy adversary proceedings are governed by the same rules that govern federal civil actions." *Yadidi v. Herzlich (In re Yadidi)*, 274 B.R 843, 848 (9th Cir. B.A.P. 2002). A pleading asserting a claim contains: (1) a statement of basis for jurisdiction; (2) a "short and plain" statement of the claim showing the pleader is entitled to relief; and (3) a demand for judgment for the relief sought. Fed. R. Civ. P. 8(a), incorporated by Fed. R. Bankr. P. 7008(a). "The Court must construe the complaint in light of reason and common sense so

TRAYLOR'S OPPOSITION TO MOTION TO DISMISS 4

as to do substantial justice." *Yadidi*, 274 B.R. at 849 (citation and quotation omitted); *see also* Fed. R. Civ. P. 8(e), incorporated by Fed. R. Bankr. P. 7008(a).

"Some matters must be pled with particularity, including circumstances constituting fraud or mistake." *Yadidi*, 274 B.R. at 849; *see also* Fed. R. Civ. P. 9(b), incorporated by Fed. R. Bankr. P. 7009. "But even where fraud is alleged, all that is required is a concise statement of the circumstances alleged to constitute the fraud, with no need to provide elaborate detail. Further, it is only necessary to allege ultimate facts and not evidence." *Thomas v. Lyles*, 47 B.R. 27, 31 (Bankr. S.D. Cal. 1984) (citation and quotations omitted). Accordingly, a complaint objecting to discharge must "state with particularity the underlying facts and the wrong alleged so that the broad policy of the federal rules to fairly apprise parties of the complaint against them in sufficient detail to allow them to adequately answer and prepare their defense is ensured." *See State Farm Fire & Cas. Co. v. Jenkin (In re Jenkin)*, 83 B.R. 733, 734 (9th Cir. B.A.P. 1988) (citation and quotations omitted)

### B. Standard on Motion to Dismiss

In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Bankr. P. 7012 / Fed. R. Civ. P. 12(b)(6), the Court "presumes all factual allegations of the complaint to be true and draws all reasonable inferences in favor of the non-moving party." *McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 604 (9th Cir. B.A.P. 1998). Dismissal of the complaint is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Clarification, greater particularity, and other refinements in pleadings are accomplished through a combination of motions, discovery, pretrial orders, and liberal toleration of amendments. Thus, a defective complaint is not subject to dismissal with prejudice, i.e. without opportunity to amend or replead, unless either it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of its allegations or multiple repleadings have not cured the defects. These requirements of liberal construction and of notice pleading, subject to liberal amendment and clarification during the pretrial phase, apply equally in bankruptcy as in general federal civil practice." *Yadidi*, 274 B.R. at 849 (citations omitted); *cf. Jenkin*, 83 B.R. at 735 (a

TRAYLOR'S OPPOSITION TO MOTION TO DISMISS 5

complaint objecting to discharge that merely recites statutory language is deficient but cannot be dismissed without opportunity to amend unless there is bad faith or prejudice).

### C. **Plaintiff's Complaint Alleges Fraud Under 11 U.S.C. § 523(a)(2)(A) with the Requisite Particularity**

Plaintiff's Complaint alleges that Ressa's debts to Traylor are nondischargeable under 11 U.S.C. § 523(a)(2)(A) on the ground that Ressa obtained money from Traylor by false pretenses, false representations, or actual fraud. *See* 11 U.S.C. § 523(a)(2)(A) ("A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt- (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by - (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...").

In order to plead nondischargeability under 11 U.S.C. § 523(a)(2)(A), Plaintiff must allege: (1) the debtor made a representation; (2) at the time the debtor knew the representation was false; (3) the debtor made the representation with the intention of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained damage as the proximate result of the representation having been made. *See Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996); *see also Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991). As explained below, each of these pleading elements is satisfied in the present case.

With respect to the first element, a representation by the debtor, the Complaint specifies the dates and terms of the loans that Traylor made to Ressa, including the specific representations made by Ressa regarding the dates or conditions under which the loans would be repaid. (Complaint, ¶¶ 9-17, 19). It further alleges that"[w]hen Traylor's loans were not repaid, Ressa promised Traylor that if Traylor would simply grant forebearance on the repayment of the existing loans, and make new loans as needed, then Traylor would either be repaid with interest, or would be given security by way of a deed of trust or other adequate security, or that Traylor would eventually be given an equity share in one or more of the entities that would eventually hold title to the projects so that Traylor would share in the profits from the projects." (*Id*.). Thus, the Complaint sets forth the alleged misrepresentations with the requisite particularity.

The second element for pleading nondischargeability is also satisfied, since the Complaint alleges that Ressa's representations were knowingly false insofar as "Ressa had no intention of properly investing Traylor's money or repaying Traylor as promised …" (Complaint, ¶ 21). The Complaint details the evidentiary facts showing Ressa's scienter by alleging that "Ressa either mismanaged the projects and the loan funds obtained from Ressa such that he failed to pay the costs of labor or materials for the various projects, and did thereby allow liens to accumulate on the properties, thereby making refinancing difficult or impossible, and thereby preventing repayment of Traylor's loans; or Ressa secretly refinanced the projects and did take and keep for himself the proceeds of the new loans from Traylor without repaying Traylor the sums owed on the loans; or Ressa commingled the loans from Traylor with Ressa's own personal funds instead of investing the loans from Traylor into the real estate projects as promised; or Ressa improved the properties and then secretly conveyed title to third parties to hold for Ressa's benefit so as to make it appear that the projects had to be sold off without profit and without paying off Traylor's loans." (Complaint, ¶ 21). Ressa's intent not to repay the money he took from Traylor can also be inferred from Ressa's failure to repay any of the amounts he borrowed from Traylor and his continual failure to honor his promises that he would repay Traylor. *See Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (Cal. Sup. Ct. 1985) (an intent not to perform a promise may be inferred from a defendant's "failure even to attempt performance, or his continued assurances after it was clear he would not perform."). In short, this case does not involve a bankruptcy debtor who incurred debts with unrealistic hopes of repaying them, but rather a debtor who purposely engaged in a pattern of fraudulent conduct to gain money with no intention of repaying his debts. *See Eashai*, 87 F.3d at 1089 (a debtor's debt is nondischargeable under Section 523(a)(2)(A) where the debtor "conceals his wrongful intent and fails to disclose to the creditor that he has no intention of paying his debt.").

Although not addressed in Ressa's Motion to Dismiss, the Complaint also adequately alleges the other prongs of the fraud claim. With respect to the intent to induce reliance, the Complaint states that Ressa's representations were made for the purpose of deceiving Traylor, and to induce Traylor "to make the new loans as alleged [in the Complaint], and to grant forebearance on collection of existing loans." (Complaint, ¶ 20). The Complaint further alleges justifiable reliance by

Traylor, i.e., that "Traylor reasonably relied upon the oral and written promises and claims or Ressa with regard to how the money would be used, how the loans would eventually be repaid, and the promises that Traylor would receive a security interest in the properties." (Complaint, ¶ 23). Fifth, the Complaint alleges that Traylor was damaged by Ressa's fraud in that "Ressa kept Traylor's money for his own profit and use." (Complaint, ¶ 1).

### D. Ressa's Misrepresentations Concerning His Intent to Repay the Loans Constitutes Actual Fraud

Traylor's Complaint does not merely allege a failure by Ressa to repay Traylor's loans, bur rather a pattern of ongoing fraudulent representations by the debtor regarding his intent to repay Traylor. As such, the Complaint states a legally viable claim for fraud under 11 U.S.C. § 523(a)(2)(A).

The Ninth Circuit has recognized that "a promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A)." *Rubin v. West (In re Rubin)*, 875 F.2d 755, 759 (9th Cir. 1989). This principle was applied by the Ninth Circuit Bankruptcy Appellate Panel in *Barrack*, wherein the Panel found that a creditor had plead a valid claim under Section 523(a)(2)(A) by alleging that the debtor made fraudulent misrepresentations regarding his intent to perform under a contract for the purchase of the creditor's residence. *Barrack*, 217 B.R. at 607.

Without addressing these Ninth Circuit authorities, Ressa attempts to rely on an out-of-state case, *S & L Enterprises I, LLC v. Eisaman (In re Eisaman)*, 387 B.R. 219, 223 (Bankr. N.D. Ind. 2008), for the proposition that Ressa's breach of the loan agreements does not constitute fraud under Section 523(a)(2)(A). In *Eisaman*, the Bankruptcy Court for the Northern District of Indiana dismissed a claim under Section 523(a)(2)(A) that alleged that the defendant corporate officer breached a duty to use loan proceeds to improve certain real property. *Eisaman*, 387 B.R. at 224. The basis for the dismissal of the fraud claim was that "[t]here are no allegations concerning the who, what, when, where, or how of any representations made to the plaintiff or how there might be any falsity involved." *Id.* at 223. The dismissal of the fraud claim was without prejudice, and the Bankruptcy Court explicitly granted the plaintiff leave to amend his complaint to satisfy the

TRAYLOR'S OPPOSITION TO MOTION TO DISMISS 8

requirements of Section 523(a)(2).

The present Complaint, unlike the Complaint in *Eisaman*, provides substantial details concerning the misrepresentations made by Ressa to Traylor, and alleges facts demonstrating that Ressa's promises to repay Traylor were made by Ressa with knowledge of their falsity. Under Ninth Circuit precedent, this is clearly sufficient to state a claim for actual fraud under Section 523(a)(2)(A).

### E. Defendant's Debt Is Also Non-Dischargeable Under Sections 523(a)(2)(B) and 523(a)(6) of the Bankruptcy Code

Plaintiff's Complaint only objects to dischargeability on the grounds of actual fraud under Section 523(a)(2)(A). This makes sense, as "the paradigmatic case for § 523(a)(2)(A) … arise[s] when a debtor lies to a creditor to obtain a loan and the creditor seeks repayment of the loan in bankruptcy." *See Rubin,* 857 F.2d at 758.

As noted in Ressa's Motion, Plaintiff's Complaint does not presently object to dischargeability under Sections 523(a)(2)(B) and 523(a)(6) of the Bankruptcy Code. Plaintiff elected not to assert a claim under Section 523(a)(2)(B), since Sections 523(a)(2)(A) and 523(a)(2)(B) have generally been treated as mutually exclusive. *See Jokay Co. v. Mercado (In re Mercado)*, 144 B.R. 879, 882 n.3 (Bankr. C.D. Cal. 1992) ("Subparagraph (A) is mutually exclusive from subparagraph (B).") (citation omitted). Plaintiff also elected not to assert a claim under Section 523(a)(6), since that statute generally applies when "when a debtor intentionally injures a creditor and the creditor seeks to make nondischargeable a judgment that he has won in a state court tort action." *See Rubin*, 857 F.2d at 758. Here, no state court judgment has been entered in favor of Traylor against Ressa.

Based on the foregoing, Defendant's discussion of the application of Section 523(a)(2)(B) and Section 523(a)(6) is irrelevant to any issue presently before the Court. Although Plaintiff believes that Section 523(a)(2)(A) is the appropriate statute under which to proceed in this case, Plaintiff does reserve his right to assert causes of action under Sections 523(a)(2)(B) and 523(a)(6), particularly insofar as the facts of this case would support a finding that Ressa made false written statements and caused "willful and malicious injury" to Traylor.

## IV. CONCLUSION

Plaintiff's Complaint pleads with the requisite particularity that Ressa committed actual fraud by falsely representing his intent to repay the monies that he took from Traylor. Therefore, Ressa's Motion to Dismiss should be denied, or, in the alternative, Traylor should be granted leave to amend his Complaint to cure any deficiency identified by the Court.

Dated: July 27, 2010          LAW OFFICES OF SETH W. WIENER

/S/

By: _____
Seth W. Wiener
Attorney for
KEVIN TRAYLOR

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM was served on July 27, 2010. Service was accomplished by the method and to the following as indicated:

BY ELECTRONIC NOTICE OR FIRST CLASS MAIL

Guiseppe Ressa
899 King Street, Unit 887
San Francisco, CA 94107

Darya Sara Druch
Law Offices of Darya Sara Druch
1 Kaiser Plaza #480
Oakland, CA 94612

E. Lynn Schoenmann
800 Powell Street
San Francisco, CA 94108

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 27, 2010, at San Ramon, California.

By: /S/

_____
Seth W. Wiener